**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**DAQUARIUS WRIGHT** **PLAINTIFF**

**V.** **NO. 4:23-CV-220-DMB-RP**

**JAMES HAYWOOD,**
**JOHN HENRY WHITE,**
**and MARVIN FLOWERS** **DEFENDANTS**

# ORDER

Daquarius Wright challenges the conditions of his confinement under 42 U.S.C. § 1983, alleging that Sheriff James Haywood, Deputy Sheriff John Henry White, and Chief Deputy Marvin Flowers denied him medical treatment for injuries he sustained when the van transporting him to court collided with a car. Arguing that Wright fails to state a legally sufficient claim, did not exhaust his administrative remedies, and did not timely submit a notice of claim, the defendants move for summary judgment. Because Wright's claims are not legally sufficient, and Wright did exhaust available administrative remedies, summary judgment will be granted.

## I
## Background and Procedural History

On November 16, 2023, Daquarius Wright, while incarcerated at the Sunflower County Jail,[1] filed a pro se form "Complaint for Violation of Civil Rights" in the United States District Court for the Northern District of Mississippi against Sheriff James Haywood, Deputy Sheriff Henry White, and Chief Deputy Marvin Flowers in their individual capacities. Doc. #1. In his complaint, Wright asserts his Eighth Amendment rights were violated based on allegations that on February 6, 2023, White caused a transportation van taking him to court to be involved in a car

[1] *See Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (per curiam) (Prison Litigation Reform Act applies when inmate incarcerated at time he files suit, even if released during pendency of suit).

wreck; he "received upper back and neck pain from the car wreck and … did not receive [any] medical treatment," "was denied medical treatment," and "suffer[ed] mental trauma from the wreck as well." *Id.* at 3, 4, 5. According to the complaint, Wright filed a grievance with the Sunflower County Sheriff's Department "requesting to receive medical treatment from the wreck" but "[he] never received [a] response from Jail Administrator Eddie Bounds concerning [his] grievance." *Id.* at 7, 8. The same day he filed the complaint, Wright moved to proceed in forma pauperis, which United States Magistrate Judge Roy Percy granted pursuant to 42 U.S.C. § 1915 on November 21, 2024. Docs. #2, #8. The defendants answered the complaint on January 21, 2025, and filed an amended answer eight days later. Docs. #14, #15.

On January 2, 2026, the defendants filed a motion for summary judgment. Doc. #17. Wright did not respond to the motion.

## II
## Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' while a dispute about that fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] district court may not grant a motion for summary judgment merely because it is unopposed." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). And, a failure to oppose a motion for summary judgment does not relieve a plaintiff of his burden to demonstrate the existence of genuine issues of material fact. *See Sangi v. Fairbanks Cap. Corp.*, 219 F. App'x 359, 361–62 (5th Cir. 2007) (per curiam) (affirming summary judgment where district court "acknowledged that the motion

was unopposed [and] granted summary judgment on the basis that the [plaintiffs] had not established a fact issue on an essential element of their case").

In determining whether summary judgment is appropriate, "[t]he Court is not permitted to make credibility determinations or weigh the evidence." *O'Neil v. Allstate Prop. & Cas. Ins. Co.*, No. 5:17-cv-70, 2018 WL 4001978, at *3 (S.D. Miss. June 25, 2018) (citing *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## III
## Material Facts

On April 28, 2021, Daquarius Wright was arrested for capital murder and booked with the Indianola Police Department. Doc. #17-2 at PageID 81–83. Pursuant to his arrest, Wright was incarcerated at the Sunflower County Jail in Indianola, Mississippi. Doc. #1 at 2. According to his file at the Sunflower County Jail, Wright has received treatment for his physical health and his mental health throughout his incarceration. Docs. #17-2, #17-3.[2]

On the date of his arrest, Wright was given an initial skin test to ensure he did not have tuberculosis. Doc. #17-3 at PageID 122. A few days later, on May 7, 2021, Wright requested medical treatment, "claim[ing he] was kicked at [the] time of [his] arrest and has had pain at [his] side;" specifically, his "right low Rib-cage" was sore. *Id.* at PageID 123. Medical staff responded

[2] Some portions of Wright's administrative file, Doc. #17-2, and medical file, Doc. #17-3, are duplicative. For clarity, when duplicative, the Court will cite only one source.

to Wright's request, ordering an x-ray. *Id.* at 123–26. The x-ray showed a "[n]ormal right rib series" and "demonstrate[d] no fractures or dislocations." *Id.* at PageID 126. Medical personnel also noted that they would see "if he can have an extra mattress." *Id.* at PageID 123. On December 1, 2022, Wright was taken to the dentist "to get a tooth filled or pulled." *Id.* at 131–32.

Wright continued to receive health care treatment in 2023. On February 7, 2023 (one day after the wreck alleged in the complaint), Wright was admitted to South Sunflower County Hospital and diagnosed with a "[t]horasic [sic] strain." *Id.* at PageID 134–37. Two weeks later, on February 21, 2023, Wright went to Indianola Family Medical Group for a yearly checkup. *Id.* at PageID 138–39. A week after that, on February 28, 2023, Wright reported that he fell when exiting the shower and complained of back pain. Doc. #17-2 at PageID 88. Officers offered Wright medication for his pain but Wright refused to accept it. *Id.* Two days later, Wright again reported that he had fallen in the shower, stating that he "was in severe pain." *Id.* at PageID 87. Despite this, Wright went on the yard and played basketball less than four hours after making the report. *Id.* Wright was seen again at South Sunflower County Hospital on March 7, 2023, where cervical spine x-rays were taken and confirmed that Wright had a "[n]ormal cervical series." Doc. #17-3 at PageID 142. Wright initiated another sick call request on April 20, 2023, stating that he "ha[d] a foot fungus," "need[ed his] psych meds," and had scoliosis pain. *Id.* at PageID 143. Jail medical personnel provided Wright with Flexeril and Motrin upon hearing these complaints. *Id.* On June 12, 2023, for reasons not explained in the record, Wright had a urinalysis, which yielded normal results. *Id.* at PageID 154. Wright initiated three more sick call requests in 2023, two of which concerned getting his nails clipped, and one related to a request to see his psychiatric doctor. *Id.* at PageID 144–46. All three requests were answered by the jail's medical staff. *Id.*

Wright also sought and received medical care in 2024. In June 2024, he initiated two

separate sick call requests in which he asked that his nails be clipped. *Id.* at PageID 148–49. In response to the first request, medical personnel trimmed Wright's nails. *Id.* at PageID 148. Medical personnel attempted to trim his nails in response to the second request but Wright refused to let them. *Id.* at PageID 149. On June 25, 2024, Wright presented to Indianola Family Medical Group for a checkup. *Id.* at PageID 150–53. Wright initiated two sick call requests near the end of 2024, asking that his nails be trimmed. *Id.* at PageID 155, 157. Wright was brought to the medical unit to have his nails clipped in response to both sick call requests. *Id.*

On June 24, 2025, for reasons not revealed in the record, Wright was prescribed olanzapine, diphenhydramine, escitalopram oxalate, and omeprazole. *Id.* at 164. Wright requested his nails be trimmed on August 1, 2025, which was answered by jail medical personnel. *Id.* at 158. On September 4, 2025, Wright went to Indianola Family Medical Group again for an annual exam. *Id.* at PageID 159–63.

## IV
## Analysis

The defendants argue that "the Complaint fails to state a claim upon which relief could be granted, … Wright has failed to exhaust administrative remedies[ and] failed to establish that he was denied medical treatment, … any state law claims are barred for the failure to timely submit a Notice of Claim within one year of the alleged actionable conduct," and "Wright fails to identify any constitutional violation nor any other actionable conduct allegedly committed by [them], and as such the matter should be dismissed." Doc. #18 at 1.

### A. Failure to State Claim

The defendants argue that "Wright's Complaint fails to make any specific allegations against [them], and instead simply states that Sunflower County denied him medical treatment;" "[t]he only name mentioned in the Complaint is Jail Administrator Eddie Bounds, but Bounds is

not named as a Defendant;" and "Wright claims that he has received no response to his grievances, but fails to identify any grievances that have been filed, the dates of said grievances or any other details to support his claims." *Id.* at 2. The defendants maintain that "Wright's allegations are less than specific and do not provide any basis to sustain the claims" because "his allegations … fail to identify any specific dates or individuals, and provide nothing other than vague and speculative conclusions." *Id.* at 7. Specifically, "none of [them] work at the detention center where Wright is being housed, and there is no allegation that any of [them] have ever been asked to provide any medical treatment to Wright;" "[t]here is certainly no allegation that any of [them] were aware of any serious medical needs of Wright and were deliberately indifferent to those needs;" and "[t]he records in Wright's medical file directly refute any claim that Wright has been denied medical treatment by any prison official" since "[o]n each occasion that Wright has requested treatment, he has been seen at the jail or transported to an outside medical facility." *Id.* at 5–6.

For a § 1983 claim for denial of medical care, "[a]n inmate must satisfy two requirements to establish an Eighth Amendment violation":

> First, the deprivation alleged must be sufficiently serious, such that the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." [*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)]. Second, the inmate must show that the prison official possessed a "sufficiently culpable state of mind." *Id.* (citation and quotation omitted). … [T]he state of mind required "is one of 'deliberate indifference' to inmate health or safety." *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999) (citation omitted). To establish deliberate indifference, a prisoner must show that the defendants "(1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

*Mitchell v. Wackenhut Corr.*, 224 F.3d 765, at *1 (5th Cir. 2000) (per curiam). This same deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 648–49 (5th Cir. 1996).

Though Wright alleges in his complaint that he was "denied medical treatment" after he was involved in a car crash on February 6, 2023, Doc. #1 at 5, the complaint does not identify any jail official who denied him medical treatment, much less any one of the defendants. Further, there is nothing in the summary judgment record which suggests that Wright requested medical treatment from Haywood, White, or Flowers, or that any of them otherwise were tasked with overseeing Wright's medical needs. To the contrary, it appears that on February 7, 2023—one day after the alleged wreck—Wright was taken to South Sunflower County Hospital and treated for a thoracic strain. Doc. #17-3 at PageID 134–37. The records reflect that Wright was seen and treated, including at off-site medical facilities, each time he requested medical treatment. *See generally* Docs. #17-2, #17-3; *see Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) ("Deliberate indifference is not established when 'medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials[.]'") (alterations in original) (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)). To the extent Wright may disagree with the course of treatment implemented by South Sunflower County Hospital as to him, such is not adequate to state a claim for relief. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001) ("Disagreement with medical treatment alone cannot support a claim under § 1983."); *accord Norton*, 122 F.3d at 292. *See also Brauner*, 793 F.3d at 498 ("To meet his burden, the plaintiff must show that [jail] officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.") (internal quotation marks omitted) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). In short, because Wright's claim is based only on conclusional allegations and unsubstantiated assertions, summary judgment is proper.

**B. Failure to Exhaust Administrative Remedies**

The defendants argue that Wright failed to exhaust all administrative remedies because he "has never filed any grievances related to his claimed denial of medical treatment, and certainly never carried a grievance through to its conclusion." Doc. #18 at 8.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. § 1983. 42 U.S.C. §1997e(a). A prisoner must exhaust administrative remedies even when he seeks monetary damages which cannot be granted by the administrative process. *Booth v. Churner*, 532 U.S. 731, 738–39 (2001).[3]

Here, there is no record of Wright having submitted a grievance regarding his allegations arising out of a car wreck or his allegation that the defendants denied him medical care afterwards. Since there is no evidence in the summary judgment record demonstrating that Wright completed the grievance process as to his allegations, such allegations cannot be maintained due to his failure to exhaust administrative remedies.

**C. Failure to Timely Submit Notice of Claim**

The defendants argue that "[w]hile it is not entirely clear whether Wright is making any state law claims, to the extent that any such claims were asserted in the Complaint, they are subject to dismissal." Doc. #18 at 4. In particular, the defendants submit that any state law claims require dismissal pursuant to Mississippi Code § 11-46-11(2) since:

> Wright never served a Notice of Claim to the Sunflower County Chancery Clerk, which is required before filing suit under the [Mississippi Tort Claims Act (MTCA)] for any state law claims. Sunflower County is not named in the Complaint, but it is alleged that Defendant White was negligent in causing the accident on February 6, 2023. To make any claims for negligence against White or Sunflower County; however, a pre-suit notice of claim must first be served within

[3] "[A] prisoner's failure to exhaust administrative remedies does not deprive courts of subject matter jurisdiction in suits covered by the PLRA," and "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, … judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 271, 272 (5th Cir. 2010).

> one year of the allegedly negligent conduct. The accident at issue occurred almost three years ago, on February 6, 2023, and a Notice of Claim was never served. Thus, it is clear that any state law claims against White or Sunflower County are barred, and should be dismissed.

*Id.* at 5.

As to this argument, the Court notes that Wright filed a form complaint for claims "[u]nder 42 U.S.C. § 1983," and § 1983 allows individuals to seek redress when state officials deprive them of constitutional rights or rights arising under federal law, not state law. Doc. #1 at 3; *see Topper v. Progressive Cnty. Mut. Ins. Co.*, 598 F. App'x 299, 300 (5th Cir. 2015) (per curiam) (no § 1983 claim pled where plaintiff "assert[ed] various tort … claims under state law" and "d[id] not allege the violation of a federally guaranteed right"). But because the Court's "examination of a plaintiff's complaint should consider substance, not surface," *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 155 (2017), the Court will look past the complaint's label of its claims to determine whether Wright alleges any state law claims.

Like the defendants, the Court finds it "difficult to ascertain exactly what is being alleged by Wright." Doc. #17 at 2. The complaint does not directly allege that White was negligent, though it does allege that "White caused a car wreck," and "White was in the fast lane then made a sharp right turn on second street … causing a wreck with a black car in the right lane." Doc. #1 at 4, 5. However, there is no evidence in the summary judgment record that the wreck occurred, much less that Wright's negligence caused it. In any event, White is sued only in his individual capacity, and his alleged actions were committed while he was transporting prisoners to court. Since the MTCA provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties," any state negligence claim against White in his individual capacity are barred, regardless of whether notice was provided for such a claim. MISS. CODE ANN. § 11-46-7(2). Alternatively, to the extent Wright was attempting to

advance a claim that White violated his Eighth Amendment right in causing the car crash, negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986); *accord Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986).[4] There is no genuine dispute of material fact as to Wright's claims against White, and summary judgment is proper.

## V
## Conclusion

The defendants' motion for summary judgment [17] is **GRANTED**. This case is dismissed with prejudice,[5] constituting a "strike" pursuant to 28 U.S.C. § 1915(g). A final judgment will issue.

**SO ORDERED**, this 25th day of August, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

[4] The Court declines to address the defendants' arguments regarding any claims Wright may have attempted to allege against Sunflower County because Sunflower County is not named in the complaint except to the extent that Wright alleges that he was confined at the Sunflower County Sheriff's Department when the car wreck occurred and that he filed a grievance with the Sunflower County Sheriff's Department regarding the car wreck. Doc. #1 at 6, 7.

[5] "[A] district court has no discretion to grant summary judgment without prejudice." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 195 (5th Cir. 2011).